COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Bray and Annunziata
Argued at Alexandria, Virginia


RALPH FOWLER, A/K/A RALPH MANN,
 A/K/A "KILLA"
                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0629-97-4    JUDGE RICHARD S. BRAY
                                       MARCH 24, 1998
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
               Herman A. Whisenant, Jr., Judge

        Anne T. Godson for appellant.

        H. Elizabeth Shaffer, Assistant Attorney
        General (Richard Cullen, Attorney General, on
        brief), for appellee.


    A jury convicted Ralph Fowler (defendant) for attempted

murder and related use of a firearm.  On appeal, defendant

complains (1) that the trial court erroneously permitted the

Commonwealth to amend the indictments to include an alias,

"Killa," for defendant, and (2) that the evidence is insufficient

to support the convictions.  We disagree and affirm the trial

court.

    The parties are fully conversant with the record and this

memorandum opinion recites only those facts essential for

disposition of the appeal.

    In accordance with well established principles, we view the

evidence in the "light most favorable to the Commonwealth,

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). "[A] jury is not required to accept in toto an accused's [testimony], but may rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991) (citations omitted).

Here, the evidence established that Jimmy Medina, Latisha Brown, and their infant daughter were at their residence when Medina learned from an acquaintance that someone was "out front ask[ing] for [him]." Medina proceeded to the front door and observed defendant and Javon Saunders "standing against the car." "They" asked if Medina was Jimmy Hale, a friend of Medina's brother, Joseph. Medina replied, "no," closed the door, and returned to his family.

Shortly thereafter, Medina responded to a knock at the back door and again encountered defendant and Saunders. Saunders pointed a handgun at Medina's chest and commanded, "You know what time it is. Get the f--- on the ground." Presuming that he was "getting robbed," Medina struggled with defendant while Saunders entered the home, confronted Brown and angrily demanded, "Where the f--- is he, bitch?" Brown answered, "I don't know," and

- 2 -

Saunders struck her in the face and head with the weapon, stated, "F--- this s---, I'm going to cap your ass, bitch," and placed the "gun to the back of [her] head." Brown "ducked" and immediately heard a gunshot. Also hearing the shot, Medina ran from the back door to the front of the residence and was again confronted by Saunders pointing the gun at him. Medina then fled and escaped, despite pursuit by defendant and Saunders.

Subsequent investigation revealed that the bullet passed within "four or five inches" of the infant resting on the sofa. Forensic tests matched it to a gun discovered during the execution of a search warrant at the defendant's residence. Handsets from two telephones were missing, and police later recovered one near the rear door bearing Saunders' fingerprints.

Defendant testified that he and Saunders had traveled to Medina's home intending to purchase marijuana, armed with the gun as customary during their "drug deals." The three men argued over the quantity of drug sold to them by Medina, and Saunders threatened Medina with the weapon in an effort to recoup purchase money. When Medina fled from the back door, Saunders pointed the weapon at Brown, and defendant, not "want[ing] nobody to get shot," "snatched the gun" from Saunders and "it went off." Defendant denied chasing Medina, but admitted striking Brown "one time in the head" "[b]ecause she was . . . raising her voice at me and pushing us."

Prior to the commencement of trial, the Commonwealth moved

to amend the indictments to include the alias, "Killa," for defendant. Defendant objected, arguing that no evidence supported the proposed amendment. In response, the Commonwealth proffered, unchallenged by defendant, that defendant had written a letter "signed with that nickname . . . [and bearing] his fingerprints," and the court granted the motion.

### The Amendment

On brief, defendant relied both upon his original argument that the Commonwealth failed to provide a proper foundation for the amendment, and the additional contention that the "damaging nature of this name was highly prejudicial" to defendant, while "provid[ing] no probative evidence." However, during oral argument, defendant correctly conceded that the unchallenged unilateral avowal by the Commonwealth properly established a foundation for the amendment, see Stewart v. Commonwealth, 10 Va. App. 563, 568, 394 S.E.2d 509, 512 (1990), and we are procedurally barred from considering defendant's remaining argument.

It is well established that we will not consider an argument on appeal which was not presented to the trial court. See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). "[E]rror will be sustained to a ruling of the trial court only when the objection was stated, together with the grounds therefor, at the time of the ruling, except for good cause . . . or . . . to attain the ends of

justice." Snurkowski v. Commonwealth, 2 Va. App. 532, 536, 348 S.E.2d 1, 3 (1986); Rule 5A:18. Defendant in this instance failed to argue the prejudice issue before the trial court and, finding no circumstances justifying the ends of justice exception, thereby precluded appellate review. See Redman v. Commonwealth, 25 Va. App. 215, 218, 487 S.E.2d 269, 271 (1997).

### Sufficiency of the Evidence

First degree murder includes "any willful, deliberate, and premeditated killing." Code § 18.2-32. "'To sustain a conviction for attempted murder, the evidence must establish both a specific intent to kill the victim and an overt but ineffectual act committed in furtherance of the criminal purpose.'" Bottoms v. Commonwealth, 22 Va. App. 378, 382, 470 S.E.2d 153, 155 (1996) (quoting Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987)). The jury may find premeditation based on "all the facts and circumstances[, and t]he intention to kill need not exist for any specified length of time prior to the [attempted] killing." Mundy v. Commonwealth, 11 Va. App. 461, 479, 390 S.E.2d 525, 535, aff'd en banc, 11 Va. App. 461, 399 S.E.2d 29 (1990). "'A design to kill may be formed only a moment before the [attempted] act is committed provided the accused had time to think and did intend to kill.'" Clozza v. Commonwealth, 228 Va. 124, 134, 321 S.E.2d 273, 279 (1984) (citation omitted).

"Concert of action" constitutes "'action that has been planned, arranged, adjusted, agreed on and settled between the

parties acting together pursuant to some [wrongful] design or scheme.'" Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994) (citation omitted). "All participants in such planned enterprises may be held accountable for incidental crimes committed by another participant during the enterprise even though not originally or specifically designed." Id. "Hence, it is not necessary that the crime should be a part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose." Carter v. Commonwealth, 232 Va. 122, 127, 348 S.E.2d 265, 268 (1986) (citations omitted).

Defendant's own evidence clearly established that he and Saunders, acting in concert, had gone to Medina's home armed and with the intent to purchase illegal drugs. Saunders' subsequent conduct and attendant statements to Brown supplied the requisite elements of attempted murder as an incidental, likely consequence of the joint criminal enterprise. Thus, defendant was equally culpable for Saunders' crimes.

Accordingly, we affirm the convictions.

Affirmed.